IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANNIE LUCAS BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case Number 2:07-cv-841-MHT |
| | § | |
| ALABAMA PUBLIC LIBRARY | § | |
| SERVICE, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO STRIKE**

COMES NOW Defendant, the Alabama Public Library Service ("the APLS"), and hereby moves this Court to strike certain exhibits and testimony filed by the Plaintiff in her Opposition to Defendant's Reply Brief (Doc. 23) on the grounds that it constitutes inadmissible hearsay.[1] As grounds, the APLS shows as follows:

1. Page 3 (first paragraph) of Doc. 23 discusses a trip to Bayou La Batre and cites Exhibit 2 as evidence of certain events surrounding this trip. Exhibit 2 is unauthenticated, contains unsworn handwriting, and has never been produced to the APLS in this action. See, e.g., Godwin v. Nat'l Union Fire Ins., 2007 U.S. Dist. LEXIS

---

[1] Inasmuch as the Plaintiff provides unauthenticated and inadmissible evidence in support of her Opposition Brief, she also repeatedly mischaracterizes and misstates the evidence that she presents. For example, other than as discussed in footnotes 2 and 3, Plaintiff characterizes certain events surrounding the rescheduling of a trip to Bayou La Batre while the Plaintiff was out sick, as discriminatory, sneaky and underhanded. [Doc. 23, p. 3]. Plaintiff, however, fails to present the Court with the evidence as to *why* the trip was rescheduled, i.e., because an internet technician changed his schedule the Friday before the trip which required the trip to be advanced from Wednesday to Monday. [See Mitchell depo., p. 94, l. 17 to p. 95, l. 8].

87305, at *6-*7 (M.D. Ala. 2007)(striking unauthenticated exhibits). Therefore, Exhibit 2 is inadmissible and is due to be stricken in its entirety.

    2.    Page 3 (fourth paragraph) of Doc. 23 discusses the Plaintiff's deposition testimony (pp. 33-35 of Ex. 4) concerning alleged statements made by one APLS employee (Harry Lensch) to another APLS employee (Amanda Daniels) outside the Plaintiff's physical presence. The Plaintiff's testimony about statements purportedly made by Harry Lensch to Amanda Daniels constitutes double hearsay. See, e.g., Robinson v. LaFarge N.America, Inc., 240 Fed. Appx. 824, 829 (11th Cir. 2007)(concluding that double hearsay statements have no probative value and are not to be considered in a hostile work environment case); Grier v. Snow, 206 Fed. Appx. 866, 869 (11th Cir. 2006). Therefore, pages 33-35 of Exhibit 4 are due to be stricken in their entirety.

    3.    Page 4 (first paragraph) of Doc. 23 discusses the Plaintiff's deposition testimony (pp. 37-38 of Ex. 4) concerning statements made by Kim Goodson to the Plaintiff. Aside from wholly mischaracterizing the deposition testimony,[2] this evidence constitutes rank hearsay. Therefore, pages 37-38 of Ex. 4 are due to be stricken.

    4.    Page 4 (second paragraph) of Doc. 23 discusses the Plaintiff's deposition testimony (pp. 39-40 & 42-43 of Ex. 4) concerning alleged statements made by Hulen Bivens to Jackie Barnes. This testimony constitutes rank double hearsay. Therefore,

---

[2] In paragraph 1, page 4, Brown's brief states that, according to Ms. Brown, Kim Goodson told her that she was not being treated right or fairly "because of Mrs. Brown's race." (Doc. 23, p. 4, para. 1). This assertion mischaracterizes Ms. Brown's deposition testimony because no such testimony was given.

pages 39-40 and 42-43 of Ex. 4 are due to be stricken.

5.   Page 4 (third paragraph) of Doc. 23 refers to the Plaintiff's deposition testimony (p. 45 of Ex. 4) concerning statements made to her by Robert Schremsher. Aside from wholly mischaracterizing the deposition testimony (and Mr. Schremsher's own testimony),[3] this testimony constitutes inadmissible hearsay. Therefore, page 45 of Ex. 4 is due to be stricken.

WHEREFORE, the Defendant respectfully requests that the above identified exhibits and evidence be stricken.

/s/ Austin Huffaker
R. AUSTIN HUFFAKER, JR.
(ASB-3422-F55R)

Attorneys for Defendant
Alabama Public Library Service

**OF COUNSEL:**
RUSHTON, STAKELY, JOHNSTON &
 & GARRETT, P.A.
Post Office Box 270
Montgomery, AL 36101
(334) 206-3100 Telephone
(334) 481-0815

---

[3] In paragraph 3, page 4, Brown's brief states that Robert Schremsher told Ms. Brown that the administration at the APLS "hated Mrs. Brown because she is black." (See Doc. 23, page 4, para. 3). This, too, mischaracterizes Ms. Brown's deposition testimony because Mr. Schremsher made no reference to Brown's race. [See Doc. 23, Ex. 4, p. 45].

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Deborah H. Biggers, Esq.
113 East Rosa Parks Ave.
Tuskegee, AL 36083

                                                /s/ Austin Huffaker
                                                OF COUNSEL

IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION



ANNIE LUCAS BROWN,               )
                                 )
     Plaintiff,                  )
                                 )
                                 )  CASE NO.:
VS.                              )  2:07-cv-841-MHT
                                 )
ALABAMA PUBLIC                   )  DEPOSITION OF:
LIBRARY SERVICE,                 )  REBECCA MITCHELL
                                 )
     Defendant.                  )

S T I P U L A T I O N S

IT IS STIPULATED AND AGREED, by and between the parties through their respective counsel, that the deposition of:

REBECCA MITCHELL

may be taken before Frances P. Looney, Commissioner and Notary Public, State at Large, at the law offices of R. Austin Huffaker, Jr., 184 Commerce Street, Montgomery, Alabama 36101, on the 30th day of January, 2008, commencing at approximately 9:15 a.m.

Frances P. Looney, CSR, RPR

1  Q.  Is that Kim Owen?
2  A.  That would be Kim Owen. Ms. Brown was out the
3      last two, possibly three days -- I'll have to go
4      back again and look, I believe, for dental
5      surgery -- the week prior to them going down.
6  Q.  Let me stop you right there. Let me ask you
7      this. Had Ms. Brown had a discussion with
8      you? I believe that there was some talk
9      they would take the trip on a Monday.
10 A.  Right.
11 Q.  And do you recall a discussion with
12     Ms. Brown requesting that the trip be
13     scheduled for that Wednesday?
14 A.  Yes, ma'am.
15 Q.  Because she had a new employee coming in on
16     Monday?
17 A.  Right, and I had agreed to it. On Friday we
18     received a call from Ada Williamson that -- we
19     had assumed Wednesday was fine. We get a call
20     on Friday that said you've got to come Monday.
21     That is the only day the internet provider will
22     be available. Now, as my memory serves me,
23     Ms. Brown was home sick. I saw no reason to

|    |    |                                                                  |
|----|----|------------------------------------------------------------------|
| 1  |    | bother her because she had had dental surgery.                   |
| 2  |    | I told Mary and Kellie, go ahead and go down on                  |
| 3  |    | Monday, see what you've got to do.  Annie has an                 |
| 4  |    | employee coming in.  She really doesn't have                     |
| 5  |    | anything to do with the actual internet                          |
| 6  |    | connection.  That's your job, Mary.  So they                     |
| 7  |    | went on Monday rather than waiting until                         |
| 8  |    | Wednesday.                                                       |
| 9  | Q. | Let me ask you this.  Did you have                               |
| 10 |    | Ms. Brown's home telephone number then?                          |
| 11 | A. | Not at my home, but it's in her personnel file.                  |
| 12 | Q. | When did the librarian call you to say you                       |
| 13 |    | have to come down on Monday?                                     |
| 14 | A. | It would have been sometime on Friday.                           |
| 15 | Q. | During working hours?                                            |
| 16 | A. | Yes, ma'am.                                                      |
| 17 | Q. | Is that when you made the decision that                          |
| 18 |    | Ms. Payne and others would go on that                            |
| 19 |    | Monday?                                                          |
| 20 | A. | Yes.                                                             |
| 21 | Q. | Did you attempt to call Ms. Brown to let her                     |
| 22 |    | know about the change in the travel plans?                       |
| 23 | A. | No.                                                              |