IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANNIE LUCAS BROWN, | ) |
| | ) |
|       Plaintiff, | ) |
| vs. | ) CASE NO.: 2:07-cv-841-MHT |
| | ) |
| ALABAMA PUBLIC LIBRARY SERVICE, | ) |
| | ) |
|       Defendant. | ) |

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO STRIKE

**COMES NOW** Plaintiff, **Annie Lucas Brown,** and opposes the Defendant's Second Motion to Strike certain exhibits and testimony filed by the Plaintiff in her Opposition to Defendant's Motion for Summary Judgment **(Doc. 17)** and responds and opposes Defendant's Second Motion to Strike on the following grounds:

1. Defendant improperly argues that **Paragraph 6 of Ex. A** to Document 17 is inadmissible hearsay testimony by the Plaintiff. This argument is incorrect because **Paragraph 6** merely references the sworn affidavit of LaTonya Moore, **Exhibit 4** to **Document 17,** which Ms. Moore, who worked with processing the travel for APLS employees in July 2006, testified in her affidavit that no verbal nor written policy nor directive existed at APLS, preventing the APLS staff from inquiring about the status of their out of state travel with the Governor's Office.

**Rule 56(e) of the <u>Federal Rules of Civil Procedure</u>** provides that an opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated.

It is undisputed that LaTonya Moore was the APLS employee who processed the travel for APLS employees and therefore, LaTonya Moore is competent to testify about APLS travel policies and travel directives in her affidavit which is in the record as **Exhibit 4** to **Document 17.**

Defendant's request that **Paragraph 6** of **Ex. A** to **Document 17** is hearsay and should be stricken is due to be denied.

2. Defendant argues the first sentence of **Paragraph 11** of **Ex. A, Document 17** is inadmissible hearsay.  **Paragraph 11** of **Ex. A** to **Document 17** is the sworn affidavit of Plaintiff Annie Lucas Brown, in which she describes why she did not go immediately to the Governor's Office to pick up her travel reimbursement check and refutes Defendant's **Document 12–5, page 4,** submitted to Defendant's Motion for Summary Judgment.

Furthermore, the first sentence of **Paragraph 11** of **Ex. A** to **Document 17** is a statement of Plaintiff describing an event or condition made while the declarant, Mrs. Brown, was perceiving the event.  Therefore, this evidence falls within the Present Sense Impression

exception to the Hearsay Rule, found at **Rule 803(1) of the <u>Federal Rules of Evidence</u>**.

3. Defendant argues that **Ex. 26 to Ex. A, Document 17,** an e-mail sent to Plaintiff Brown, during her ordinary course of business at APLS is hearsay. **Rule 803(6) of the <u>Federal Rules of Evidence</u>** provides "that a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . ."

It is undisputed that e-mails are an accepted form of communication at APLS and is a business practice regularly conducted by APLS. **(See attached Annie Lucas Brown affidavit.)** Therefore, **Ex. 26 to Ex. A, Document 17** is an exception to the Hearsay Rule and is admissible pursuant to **Rule 803(6) of the <u>Federal Rules of Evidence</u>**.

4. Defendant argues that **pp. 216 - 221, 227 - 233** of **Ex. C** to **Document 17,** the sworn affidavit of Annie Brown, is hearsay. The testimony of Director Rebecca Mitchell is not offered for the purpose of asserting that the contents of the letter written by LaTonya Moore is true. The

testimony from APLS Director Rebecca Mitchell was solicited for the purpose of showing that such letter was written by black employee, LaTonya Moore and was received by APLS Director Rebecca Mitchell and eludes to the work environment at APLS. A copy of the letter which was the subject of Ms. Mitchell's testimony and was attached to Ms. Mitchell's deposition as **Exhibit H** to **Document 17** is attached.

Therefore, it is not hearsay since it is not in evidence to prove the truth of the matter asserted, but was received by Rebecca Mitchell during the ordinary course of business as being the Director of APLS pursuant to **Rule 803(6) of the Federal Rules of Evidence.**

5. Defendant argues that **Ex. G** to **Document 17**, the affidavit of Plaintiff Brown, is hearsay.

**Exhibit G** is a letter dated August 2, 2006 to Annie Brown from Kim Wilson Owen which was received by Annie Brown during her ordinary course of business at APLS and is written on APLS stationery. Therefore, it is admissible. Furthermore, the letter from Kim Owen also falls under the hearsay exception pursuant to **Rule 803(21) of the Federal Rules of Evidence,** which provides that reputation of a person's character among associates is not hearsay.

6. Defendant argues that **Ex. H** to **Document 17,** which was an exhibit to the deposition of APLS Director Rebecca Mitchell, who admitted that she received a copy of the letter from African American APLS former

Executive Secretary, LaTonya Moore. Rebecca Mitchell admitted in **Ex. C** to **Document 17, pp. 216 – 221,** that she received the letter from Ms. Moore, APLS former Executive Secretary, during the regular course of APLS business. Therefore, the letter is an exception to the hearsay rule as a Record of Regularly Conducted Activity, pursuant to **Rule 803(6) of the** Federal Rules of Evidence.

Employment discrimination cases involve peculiarly intensive state of mind questions, thus summary judgment is used sparingly and seldom granted in such cases. **Peterson v. Scott County**, 406 F.3d 515, 521 (8th Cir. 2005) Feingold v. New York, 366 F.3d 138, 148-49 (2d Cir. 2004).

Wherefore, Defendant's Second Motion to Strike should be denied in its entirety, based on the above.

DONE THIS 31ST DAY OF JULY, 2008.

**Respectfully submitted,**

/s/ Deborah Hill Biggers
**DEBORAH HILL BIGGERS (ASB-4769-I70D)**
**Attorney for Plaintiff, Annie Lucas Brown**
**113 East Rosa Parks Avenue**
**Tuskegee, Alabama 36083**
**PH: (334) 727-0092**
**FAX (334) 727-7117**
**E-MAIL: debbig@debbig.com**

**CERTIFICATE OF SERVICE**

I hereby certify that the 31st day of July, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:  **Austin Huffaker, P. O. Box 270, Montgomery, AL  36101.**

                                                  <u>/s/ Deborah Hill Biggers</u>
                                                  **DEBORAH HILL BIGGERS**
                                                  **Attorney for  Plaintiff**

STATE OF ALABAMA )
)
COUNTY OF MACON )

# THIRD AFFIDAVIT OF ANNIE LUCAS BROWN

Before me, the undersigned Notary Public in and for said state and county, personally appeared **ANNIE LUCAS BROWN,** who is known to me, and who being by me first duly sworn, deposes and states as follows:

1. That I am an African American employee of the Alabama Public Library Service (APLS), which is the defendant in this cause.

2. That I have been employed with APLS since 1997.

3. That I have personal knowledge of the facts contained in this affidavit and I give this affidavit in the employment discrimination action pending in the United States District Court for the Middle District of Alabama, in which I am the Plaintiff.

4. It is common practice during the conducting of APLS business activity for APLS employees to communicate among themselves and to communicate to others throughout the State of Alabama in the form of e-mail transmission.

5. Such e-mail transmissions between APLS employees and others by which APLS conducts regular business are maintained by employees and kept in the regular course of business.

6. That I kept and maintained on my office computer, the May 24, 2007 e-mal to Rebecca Mitchell and myself, from Tara Holman regarding a grant request to APLS pertaining to "My United States" training, which is identified in the record as Ex. 26 to Ex. A, Document 17.

7. This e-mail identified as Ex. 26 to Ex. A, Document 17, is a true and correct copy of the e-mail transmitted on May 24, 2007 at 1:58 p.m. to Rebecca Mitchell and myself. This e-mail was received and has been maintained during the ordinary course of business with my position at APLS.

8. The e-mail transmission between myself and Rebecca Mitchell sent on November 10, 2005 regarding Monday's trip to Bayou LaBatre and identified in the record as Exhibit 2 to Doc. 23, are e-mails conducted or transmitted during the course of regular APLS business and were maintained and kept by me in the regular course of business.

9. That I maintained Ex. 2 to Doc. 23 on my office computer and downloaded Ex. 2 from same, which is a true and correct copy of the e-mail transmissions between me and Rebecca Mitchell on November 10, 2005.

Done this 30th day of July, 2008.

*[signature]*

ANNIE LUCAS BROWN

STATE OF ALABAMA )
)
COUNTY OF MACON )

Sworn to and subscribed before me this 30th day of July, 2008.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 6/08/09

EXHIBIT H

December 3, 2007

Executive Board
Alabama Public Library Service
6030 Monticello Drive
Montgomery, AL 36130

Dear Board Members:

I was employed by the Alabama Public Library Service (APLS) from October 2000 through March 2004 as an Administrative Support Assistant (ASA) II and from October 2004 through May 31, 2007 as the Executive Secretary. I enjoyed most of my time while there.

During my time with APLS, I saw the work environment steadily decline. The oppressive feeling on the premises and in the building had begun to make me physically sick. My departure from the Agency earlier this year was precipitated by feelings of racial bias and hostility that I had expressed to the Agency Director and to several members of the Executive Board, to no avail.

After my supervisory role was removed from me in October 2006 to justify a white female employee's promotion, I decided that something needed to be done. In November 2006 I confidentially (due to fear of retaliation) spoke to two (2) Board members expressing my concerns over the work environment becoming hostile. I spoke to Mr. Snider and Mrs. Dickey (the then Board Chair) and asked each of them to keep my identity secret because I was afraid of losing my job as retaliation for speaking out. After the leadership of the Agency became aware that an employee had spoken to the Board members, I overheard several conversations in the Director's office where they were trying to determine who had spoken up and comments made to the effect that if they found out who it was that person would be fired. When I spoke to Mrs. Dickey she expressed a concern in what was going on and in finding a solution to the problem and she asked me to give her until after the holidays to come up with a solution. After witnessing several closed door meetings between Mrs. Dickey and the Director and Assistant Director, it became very clear to me that any solution found would inevitably be in favor and support of the Agency's leadership yet again leaving the employees to cope the best way they could with the tensions in the building.

In April 2007 (I had spoken to Mrs. Mitchell on several occasions prior to this one) I was asked in to Mrs. Mitchell's office. We went into her office and she asked me what was wrong that I seemed to have been sick a lot recently. After telling her several times that she really did not want to get into that and insisting that we needed to talk about it, I asked her if she had any idea what it was like to feel the only reason you have your job is because of the color of your skin and not your true abilities? If she knew what it was like to get physically ill every time you drove into the parking lot. I told her that is what I go through every time I wake up and have to get dressed to come to work, that every time I drove into the parking lot I would get sick at my

LaTonya Moore * 3004 Southmall Circle Apt A * Montgomery, AL 36116 * (334) 315-3737

stomach. She immediately became defensive and asked me how I could accuse of her that. I told her that I did not accuse her of anything directly and that her silence allowed people to be mistreated. When I would talk to her about how the Confidential Assistant (CA) made no attempts to hide the fact that he would rather have a white person in my position and went as far as to hire a white woman that he said to me and others "would show Mrs. Mitchell what an Executive Secretary should be," her words to me were "you just have to ignore Harry." I even went as far as to tell Mrs. Mitchell that the CA and his secretary were creating a hostile work environment for one of their employees and that the employee had every right to sue the Agency and name Mrs. Mitchell because she refused to take any action on the employees' behalf and all she said was "I told her that if she needed to talk she could come talk to me." After this employee was not able to prove the CA's point where the Executive Secretary was involved, he no longer had a need for her; once he received his new ASA III the plot began to get rid of this employee.

On several occasions I even asked if she would prefer to have someone else in my position and again she would tell me no that I just have to learn to ignore what Harry and his people were doing or saying. It became increasingly harder for me to do my job appropriately. I had informed Mrs. Mitchell of a racial comment made to me by a former subordinate that had just been promoted and given my supervisory duties as well as other duties, and that this same employee had even instructed some of her subordinates not to associate with certain other staff members which was breeding an air of contention throughout the Agency, again Mrs. Mitchell's reply was to simply ignore what was going on.

There are more incidents that need to be investigated independently of the leadership at APLS.

I hope this letter gives more insight to the treatment of employees and the work environment at the Agency and that a positive solution can be found quickly to ensure no more good employees are lost to other agencies or to early retirement.

Thank you for your time and consideration. If you have any questions please feel free to contact me at (334) 315-3737.

Sincerely,

*LaTonya D. Moore*

LaTonya D. Moore